KAWECKI, APPELLEE, *v.* KAWECKI, APPELLANT.

(Decided January 20, 1941.)

*Mr. H. Joe Cannon,* for appellee.
*Mr. S. R. Urbanski* and *Mr. Manuel H. Ganch,* for appellant.

CARPENTER, J. This is an appeal on questions of law from a judgment granting the plaintiff-husband a divorce on the ground of fraudulent contract, and adjudging that he was not the father of a child conceived before but born to the defendant after the marriage, and relieving him of any obligation to support it. The effect of that judgment was to render the child a bastard. The main assignment of error is that the judgment in both its aspects is contrary to law.

The parties, who lived within four blocks of each other on the same street, met sometime in the spring of 1937. The defendant testified that it was about March 29th. The plaintiff says it was May 17th. This is the only material fact in dispute. It is admitted that within a week or so after they met illicit sexual relations began and continued for some time.

On September 19, 1937, plaintiff was arrested on a bastardy charge by defendant, which was dismissed on his promise to marry her, and they were married October 2nd and lived together until after the child

was born January 4, 1938, a fully developed baby. The physician who attended the birth testified that in his opinion the period of gestation was 280 days, and that conception took place within a few days of March 31, 1937, or five months before the marriage.

Defendant testified that she had not had sexual relations with any other man before marriage and no one testified that she had. On February 24, 1938, this action was filed. The petition alleges and plaintiff testified that defendant represented at the time of marriage that she had been pregnant four months, and that he was the cause of it.

It being undisputed that prior to marriage the parties had had sexual relations; that at the time of marriage he knew she was pregnant; and that the child was born during wedlock, two legal questions were presented to the trial court:

1. Could it adjudge the child to be a bastard?

2. Could it grant plaintiff a divorce on the ground of fraudulent contract?

In principle, the first question is fully answered by *Miller* v. *Anderson,* 43 Ohio St., 473, 3 N. E., 605, wherein a married mother, under circumstances like these, sought to prosecute a bastardy charge against another man who she claimed was the father of her child. The court said that could not be. Speaking of such a marriage, the court said, in paragraph two of the syllabus:

"By such marriage, the man so marrying, consents to stand *in loco parentis* to such child, and is presumed in law to be the father of the child, and this presumption is conclusive."

Many decisions from other states are cited by the court and that this is the rule in most jurisdictions is indicated in the note in 8 A. L. R., 428, 431. As was said in the *Miller case,* this rule "is established * * * upon obvious principles of public policy and decency."

If the judgment in this case were to stand and this mother should seek to charge another man as being the father of her child, *Miller* v. *Anderson, supra,* would be an absolute bar to her doing so, no matter how strong the proof of her claim might be. In fact, the bastardy proceeding is only open to "an unmarried woman." Section 12110, General Code. On page 628, in *Haworth* v. *Gill,* 30 Ohio St., 627, the court said:

"The delivery and the pregnancy, as well as the making of complaint, are predicated of an *unmarried* woman. The children of married women are not *bastards* within the meaning of this act. The textbooks of the common law define a bastard as being 'one that is begotten and born out of lawful matrimony.' "

The answer to the first question is clearly "No."

The only fraud claimed by plaintiff to vitiate the marriage turned upon the time their illicit relations began. He argues that because the child was born January 4, 1938, it must have been conceived six weeks or more before he says he became acquainted with her, and that before the marriage she told him he was the author of her pregnancy. When he married her, he knew well enough she was unchaste, he knew she was *enceinte,* and he was under a paternity charge. In this situation, he chose to marry her rather than defend the paternity charge. Under these undisputed circumstances, her part in making the contract of marriage was not fraudulent within the meaning of Section 11979, General Code, and the divorce judgment should not have been entered.

The judgment being contrary to law in both of its aspects, it is reversed and final judgment dismissing the petition at plaintiff's cost is ordered.

*Judgment reversed and
final judgment for appellant.*

OVERMYER and LLOYD, JJ., concur.